## W. E. Frazer, Jr., W. Y. Parkinson and H. W. Strickler *v.* Robert J. Linton, Appellant.

*Evidence—Partnership—Declarations.*

On a bill in equity against a partner for an account where the partnership is denied, the declarations of the defendant made prior to any difference between him and the plaintiffs are not admissible at his call to corroborate the defendant's testimony.

*Partnership—Division of profits—Presumption.*

On a bill in equity by one partner against another for an account where the evidence establishes the existence of the partnership, but no definite arrangement as to the division of the profits, the presumption at law is that the profits were to be equally divided.

Argued Oct. 25, 1897. Appeal, No. 21, Oct. Term, 1897, by defendants, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1896, No. 338, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for a partnership accounting. Before STOWE, P. J.

The bill averred that a partnership existed between plaintiffs and defendant, whereby they were to share in the profits derived from the sale of certain coal lands upon which the defendant had an option to purchase; that a sale was made through the agency of McWilliams, who was introduced to defendant by the plaintiffs, and whose visit to the lands was procured by plaintiffs and enabled defendant to secure extensions of his options and eventually to make sales of the lands at a profit, which he refused to divide with plaintiffs. The prayers were for an account and payment to plaintiffs of one half the profits realized from the sale. The answer denied the partnership averred in the bill; averred an arrangement with Frazer and Parkinson, whereby they were to share in the profits of a specific sale to a particular proposed purchaser of two tracts upon which defendant had an option of purchase; the failure to make said sale, and the subsequent arrangement made by defendant with McWilliams, who procured a purchaser for said two tracts in connection with other lands secured by defendant at his own risk and expense, as necessary to the sale; and that plaintiffs had no part in effecting the sale.

At the trial, counsel for defendant proposed to prove by the witness on the stand (for the purpose of corroborating the defendant), that prior to any difference between him and Frazer, or the moving of litigation here, within a day or two after August 12, 1895, the date of the alleged agreement at the Seventh avenue hotel, the defendant told the witness, as his confidential business adviser, of the agreement that he had made with Frazer and Parkinson, at the Seventh avenue hotel, on August 12, 1895, and what the terms of that agreement were; and particularly that Frazer and Parkinson had a purchaser, who was mentioned as the Browns, of Buffalo, or Brown Brothers, of Buffalo, at the price of $140 an acre; and that the agreement was, in the event of Frazer and Parkinson producing that purchaser at that price, that the defendant, Frazer and Parkinson were to share the profits equally between them, one third to each, and that the profits so to be divided would be in the neighborhood of $40,000.

Objected to as incompetent.

Objection sustained and bill sealed for defendant.

The facts appear by the opinion of the court below which was as follows:

Sometime during July, 1895, W. Y. Parkinson and W. E. Frazer met together and had a conversation about procuring "options" on some coal in the Fourth Pool of the Monongahela river.   It was then agreed between them that Parkinson would look the matter up after he returned from a trip he was then about to make.   When he returned he went to Robert Linton, the defendant, who was in the glass business at Bellevernon, and talked to him about coal, and asked if he knew of any that could be bought.   Linton said he did, and spoke of coal belonging to McKee, and also other coal.   Parkinson told Linton that he had some parties in town who had a purchaser for some coal. Linton said he thought the coal was optioned, but wasn't certain. He could look the matter up and let Parkinson know about it. On August 3, 1895, Linton sent Parkinson, who was then in Kittanning, a telegram, saying : " Have secured option to August 15th."   About August 10, Parkinson arrived at his home in West Elizabeth, and in a day or two received the letters, dated August 10 and August 12 (exhibits "3" and "4"), from Linton.   In the first he says :

" I saw Mr. Phillipps this morning.   He is coming to Bellevernon Monday, and we are going out to see Montgomery, if he (Montgomery) will sell for 200 dollars per acre.   He will, but not less. . Will wire you Monday P. M.   If I get these two pieces, it might be best to meet in Pittsburgh Monday night at Seventh Avenue hotel and make an arrangement.   Write me about this."

In the second (exhibit " 4 "), he says :

" Your postal of the 10th received.   Do not think it would be wise to see Brown about extending until the parties come up.   Make your arrangements to come Wednesday sure, and . after examining the property I will promise to get sufficient . time.   I am going out with Mr. Phillipps to Montgomery's this . morning to get their option, if possible, from them.   Don't think they will do better than $200 per acre.   This will make it cost us $115 per acre, if Brown puts his 80 acres at $100. Think we can put it in at $140.   This will make $30,000 for us.   Wire on receipt of this if you can come Wednesday.

" Yours truly,

" R. J. LINTON."

"P. S.—You might say to your people that they must come Wednesday sure, as there is another party after it, and I will not wait longer. If they are anxious for the property this will hurry them up. In case they could come to-morrow it will suit as well.　R. J. L."

In answer, Parkinson telegraphed Linton, August 12, 1895: "Meet me at Seventh Avenue hotel at 8:30 P. M. this evening."

Parkinson and Linton, when coming to Pittsburg, in pursuance of this arrangement, met on the cars and came to Pittsburg together, and had a conversation about the option; the substance of which was, that it would be necessary to get somebody up there (Bellevernon) to get an extension of the option —"that it was about expired." The same evening, Linton, Frazer and Parkinson met at the Seventh Avenue hotel, and there it was understood, and talked about, that the option held by Linton on the Brown and McKee land, taken at the suggestion of Parkinson, was about to expire, and that somebody should go upon the field right away, as soon as he could be gotten, in order to get an extension of time. Frazer said that it was rather short notice, but he would do the best he could to get the party up there. There was also some figuring done and the prospective profits talked about, but no arrangement made as to what share each should receive. Frazer said he thought he could get a party to go up the next or following day, and Linton agreed to meet him and show him over the ground. In pursuance of this arrangement Frazer, through H. W. Strickler, got Daniel McWilliams to take the matter in hand, with a view to obtain a purchaser for the coal for which Linton held the option, and which was the subject-matter of the arrangement entered into at the Seventh avenue hotel. Frazer sent word to Linton that McWilliams would be up on the 14th. On the 15th McWilliams went to Bellevernon with a letter of introduction from Frazer to Linton, and there met Linton, and the two went to Brown's house together, and after an interview with him the option of purchase was extended. After this Frazer seems to have been dropped by defendant out of any actual participation in the subsequent proceedings. It was understood by all the parties to the suit that McWilliams was

not himself a proposed purchaser, and that he was only acting as agent for others. On August 16, Parkinson writes to Linton :

"McWilliams has moved out of town and could not learn of his address, but left word for him to meet me at 10 A. M. Will wire you Monday if anything new. I feel confident that we can sell the coal."

The negotiations were started through McWilliams, with the coöperation of Parkinson, Frazer and Linton, and by this means the option held by Linton on the Brown land was extended, and ultimately a purchaser secured. It is true that to secure the coöperation of McWilliams, Linton was induced to allow him one half of the profits (see exhibit "16," dated October 5, 1895), and Parkinson, by his letter of August 19th, to Linton, showed a disposition to turn his back on Frazer. Parkinson and Linton, however, continued for some time thereafter, acting and working together to secure a purchaser for the coal. Parkinson's last letter on the subject was dated August 30 (exhibit "10"). After this date Linton and McWilliams conducted the negotiations, entirely ignoring both Frazer and Parkinson, obtained a renewal of option of the Brown and McKee tract, but with terms somewhat different from the original option, and finally a sale was consummated.

It is true, that to accomplish this end, there were changes made in the terms of the original option, and some additional coal optioned or contracted for by Linton and put into the transaction to secure the purchaser represented by McWilliams, and through this means, through the intervention of McWilliams, a sale of the lands was made to a certain Johnson Coal Company, at prices in advance of the prices fixed in the said options, and defendant realized considerable profit therefrom.

There is no evidence that Linton, at any time during the negotiations for sale of the coal, notified either Parkinson or Frazer that they were no longer in the transaction, or that he desired or he intended to conduct the transactions upon his sole responsibility, or that they were no longer to be interested in the transaction.

### LAW OF THE CASE.

We think the evidence sufficiently shows that the plaintiffs and defendant, by agreement, entered into an arrangement by which

their labor and skill was engaged in a common enterprise, and that they were to divide the profits therein constitutes as between them (Parkinson, Frazer and Linton), a partnership therein. In pursuance of this arrangement the parties began to operate to secure the land contemplated. Frazer, through Strickler, induced McWilliams to go to see the land. Linton meets him, and they go together to Brown, and get an extension of the option. Parkinson is in constant communication with Linton in regard to the matter till August 30. And then it appears that Linton, without communicating the facts to either Frazer or Parkinson, undertook to conduct the business thereafter upon his own responsibility and in his own way, ignoring entirely the rights of Parkinson and Frazer, and with the intention of securing all the profits of the joint enterprise to himself. This, we think, he had no right to do, and that he is, therefore, liable to account to Parkinson and Frazer for one half of the profits of the transaction which he made. It might be for two thirds, but as plaintiffs only claim one half of the net profits in their bill, and Linton avers that the arrangement made at the Seventh avenue hotel, while it differs radically from that alleged by plaintiffs in other respects, was upon the basis of one half of the profits to him and one half to the others, we adjudge that defendant account for only one half of his net profits. We are of the opinion, however, that there is no evidence justifying the conclusion that H. W. Strickler ever was in any sense a partner with defendant, and therefore the bill is dismissed as to him.

The points to which answers are attached, submitted by plaintiffs, are affirmed, except so far as affects H. W. Strickler. So far as he is concerned, the first point is refused.

Let a decree be prepared, sec. reg., directing defendant to pay W. E. Frazer, Jr., and W. Y. Parkinson, plaintiffs to this suit, the one half of $1,004.74, with interest thereon from April 1, 1896, payable forthwith, and also the one half of the amounts now paid, or hereafter received by defendant on account of the four notes received by him from the Johnson Coal Company, on account of his share of profits arising out of the sale of coal lands described in plaintiffs' bill from them to him, as the said notes mature and are paid to defendant.

*Errors assigned* among others were (4) decree of the court; (6) ruling on evidence, quoting the bill of exceptions.

*D. F. Patterson*, for appellant, cited as to the exclusion of the testimony of Linton: Henderson v. Jones, 10 S. & R. 322; Bank v. Boraef, 1 Rawle, 152; McKee v. Jones, 6 Pa. 425; Craig v. Craig, 5 Rawle, 91; Sheehan's Est., 139 Pa. 168.

*R. B. Petty*, for appellees.—The previous declarations of a party are not admissible to corroborate his testimony: Clever v. Hilberry, 116 Pa. 431; 1 Greenleaf on Evidence, sec. 469; 2 Phillips on Evidence, *974; Wharton on Evidence, sec. 570; 29 Am. & Eng. Ency. of Law, 823; Ellicott v. Pearl, 10 Peters, 412; Conrad v. Griffey, 11 Howard, 481.

PER CURIAM, November 8, 1897:

We find no error in the decree, or in the rulings of the court leading up thereto. The defendant's offer, covered by the last specification, was rightly excluded for the reason that the proposed testimony was incompetent. On the facts, properly found by the court, there was no error in affirming the points quoted in the first three specifications, or in entering the decree set out at length in the fourth specification.

There is nothing in any of the questions presented by the record that requires discussion.

Decree affirmed and appeal dismissed at appellant's costs.