# CHARLESTON

## CLARK *v.* EMERY *et al.*

Submitted January 16, 1906.    Decided January 30, 1906.

1. OPTION—*Partnership.*

     Where one who has acquired options upon certain lands, enters into a written contract with another, empowering him, in the absence of the optionee, to accept the options and make sale of the lands, and providing that all profits shall be distributed equally between them, this is not a contract creating a partnership for the purchase and sale of lands, and does not entitle the person so empowered to make such sale, to share in the profits arising therefrom, unless such sale be made by him.    (p. 639.)

2. PARTNERSHIP.

     As to whether or not a partnership exists depends upon the true contract and intention of the parties, as ascertained from all the facts of the case.    And the true test as to whether the partnership does exist, is, did the supposed partner acquire by his bargain, any property in, or control over, or specific lien to, the profits while they remained undivided, in preference to other creditors.    If he did, he is a partner; and if otherwise, not.    (p. 643.)

3. PARTNERSHIP—*Insufficient Evidence.*

     A case where the evidence is insufficient to constitute a partnernership.    (p. 644.)

     *(COX, JUDGE, absent).

Appeal from Circuit Court, Monongalia County.

Action by Joseph E. Clark against Jonas W. Emery and others.    From a decree for defendants, plaintiff appeals.

*Affirmed.*

FRANK P. CORBIN and H. L. ROBINSON, for appellant.

JOHN C. BANE, R. W. IRWIN, and FRAZER & FRAZER, for appellees.

SANDERS, JUDGE :

The plaintiff filed his bill in the circuit court of Monongalia county, claiming to be an equal partner with the defendant, Emery, in the profits arising from the sale of certain coal properties made by the defendant, Emery, to the defendants, Cochrans.    Emery answered, denying that Clark is interested as a partner, or otherwise, in said lands, or · the profits arising therefrom.    Upon the hearing, the circuit

*Counsel below.

court entered a decree dismissing the plaintiff's bill, and it is from this decree that he has appealed.

The plaintiff predicates his suit upon a verbal contract which he claims was made between him and Emery, and says that afterwards, on the 8th day of May, 1901, for the purpose of more perfectly defining their respective interests in whatever profits might arise from a sale of the properties, and in order to confer full power on the plaintiff to sell and dispose of the same in the absence of Emery, they entered into the following written agreement :

"This agreement entered into this 8th day of May, 1901, by & between J. W. Emery, & J. E. Clark both of Washington Co., Pa.

"Witnesseth that both the parties hereto being equally interested in a certain option or contract made between said J. W. Emery & W. B. Hess & P. S. Johnson of Monongalia Co., W. Va., said contract covering the right of sale of from 2300 to 2500 acres of coal lands in said co., W. Va., & dated May 6th 1901.

"Now it is understood & agreed that in case of the absence of J. W. Emery from any cause that the said J. E. Clark is hereby fully empowered to accept said coal under the terms of contract with Hess & Johnson and conduct the sale of the property with full & absolute rights in the premises as though the contract were made in said Clark's name.

"All profits to be distributed equally between said Clark & Emery.

"Witnesseth our hands & seals the day and year above written.

"J. E. CLARK, [SEAL.]
"J. W. EMERY, [SEAL.]

"Attest : Geo. L. West."

The defendant, Emery, claims that no such verbal contract was made, but that, if found to have been made, it was a contract for the sale of real estate, and, to be binding, must be in writing, and signed by the party to be charged thereby, and that the contract dated the 8th day of May, 1901, is not such a contract or memorandum as can be enforced, and does not operate to take the verbal contract without the Statute of Frauds. And, also, Emery claims that said writing of May 8th is not a contract creating a partnership between him

and Clark, but that it was only executed for the purpose of giving Clark, in his absence, the power to accept certain options, and to sell and dispose of the property acquired thereunder; and that, if he should make sale thereof, he was to have one-half of the profits realized therefrom. We do not feel called upon to determine whether or not the written contract of May 8th is a contract for the sale of real estate, and whether or not it violates the Statute of Frauds, because the plaintiff, in our opinion, upon a proper construction of the very terms of the contract, is not shown to be a partner with Emery, nor entitled to any part of the profits arising from a sale of said property, unless the sale was made by him.

It would seem, from the construction of the contract alone, that it was only intended to give to Clark the power to accept the options in the absence of Emery, and make sale of the lands. The fact that it is recited that they are equally interested in the property, does not make this true, unless, as a matter of fact, they are so interested, and if so, under the claim of Clark himself, it must be upon the verbal contract which he claims he had with Emery. The concluding part of the contract, wherein it says, "All profits to be distributed equally between said Clark and Emery," is not inconsistent with the claim of Emery that in case Clark should make the sale, he was to have one-half of the profits realized therefrom, but it is entirely in accord with Emery's contention that this writing was only given to empower Clark, in the absence of Emery, to accept the options and make sale. It cannot be correctly said that it created a contract of partnership between the parties, to continue an indefinite period, and to entitle Clark to share in the profits, without consideration or responsibility. There is nothing agreed upon and fixed, by its terms, except that Clark, in the absence of Emery, is given power to accept the options and make sale of the property, and, upon his doing so, the profits were to be divided equally between them. This does not fix and define a partnership relation between the parties, but only provides for the doing of certain things by Clark in the absence of Emery, and in the event of the accomplishment of these things, he to have one-half of the profits. That part of the contract which says they are "equally interested in a certain option

or contract," is mere recital, and forms no part of the agreement. The only agreement expressed is that, in the absence of Emery from any cause, Clark shall have full power to accept the coal under the terms of the contract with Hess and Johnson, and conduct the sale of the property with full and absolute rights in the premises as though the contract were made in Clark's name, and all profits to be divided equally between Clark and Emery. It seems that this contract is complete within itself, and that it is not necessary or proper to admit evidence to vary, add to, or explain, its terms. It is perfectly well settled, that when there is no ambiguity in a written contract, parol evidence will not be received to vary, contradict, add to or explain, its terms, by proving that the agreement of the parties was different from what it appears by the writing to have been. *Campbell* v. *Fetterman*, 20 W. Va. 398; *Long* v. *Perine*, 41 W. Va. 314; *Howell* v. *Behler*, 41 W. Va. 610. "A writing is presumed to contain the whole of the contract, and will be protected from any invasion of extrinsic stipulations, if upon inspection and study of the writing itself, read, it may be, in the light of surrounding circumstances, in order to its proper understanding and interpretation, it appears to contain the engagement of the parties, and to define the object and measure the extent of such engagements, and to have been designed by the parties to be the repository and evidence of their final intentions." 21 Am. & Eng. Ency. Law, (2d Ed.), 1090.

But if the written contract does not purport to disclose a complete contract, or if in reading it in the light of the situation of the parties, and the facts and circumstances, it appears not to contain all the stipulations of the parties on the subject, then the above rule does not apply, but, under these circumstances, parol evidence is admissible to show what the rest of the agreement was. But that part of the contract which is sought to be proven must not be repugnant to or inconsistent with the written contract, for where a contract rests partly in writing and partly in parol, the written part must not be contradicted. 21 Am. & Eng. Ency. Law, (2d Ed.) 1091–1093; *Heatherly* v. *Bank*, 31 W. Va. 70; *Mathews* v. *Jarrett*, 20 W. Va. 415; *Caperton's Admrs.* v. *Caperton's Heirs*, 36 W. Va. 479; *Scraggs* v. *Hill*, 37 W. Va. 706.

The plaintiff claims that the contract of May 8th is not a complete contract between the parties, but that it contained a part of their agreement, and that the defendant's explanation of it is clearly inconsistent therewith and repugnant thereto. Admit that this contract only partially contains the stipulations and agreements of the parties, and that it may be added to or explained by parol, still we fail to see from the facts adduced anything inconsistent with the claim of the defendant, Emery. And, as we have observed, the written contract does not create a partnership between Emery and Clark, and from a careful scrutiny of the other evidence, we fail to find anything which would justify us in finding that there existed a partnership between the parties, but it was only intended that Clark should share in the profits in case he should sell the property.

In 1900, the defendant, Emery, learned of this field of coal, and that Parker S. Johnson and W. B. Hess had options on it, and thereupon he went to Morgantown to see Johnson in reference to it, and then learned, through Johnson, that Johnson and Hess had transferred their options to John C. Neff. Later, and in the month of December, following, he saw the plaintiff, Clark, and had a talk with him about these lands. In this conversation, Clark spoke of his connection with the Wayne Iron and Steel Company and the Clyde Coal Company, and said that if he had an option on this coal, he thought he could sell it to these companies. The matter then rested in abeyance until in April, 1901, except that Clark, in the meantime, made an effort to secure an option from Neff, but failed to do so. On the 26th of April, 1901, Emery secured an option from Neff, and on the following day procured one from Johnson, beginning at the expiration of Neff's option, which was on the 2nd day of May. After Emery had secured these options, he immediately informed Clark of the fact, and called his attention to the conversation which he had had with him in relation to a sale of the property to the Wayne Iron and Steel Company and the Clyde Coal Company, and then agreed with Clark that in the event he made the sale of the property, he would divide the profits arising therefrom. Clark proceeded to try to interest these companies in the sale of these lands, taking the matter up with Sanford, the superintendent of the coal company. The property was

examined by the superintendent, and on the 8th day of May, 1901, the date of the written contract, Clark, Emery and Sanford met at Brownsville, at which time the sum which Sanford should receive, and the price at which the property was to be offered to the companies, were agreed upon, and it was at this meeting that the contract between Clark and Emery was prepared and signed. Up to this time there had been no definite contract between them.

A sale to the companies was not consummated, but Clark still interesting himself in making a sale, Clark proposed to Emery that probably a sale could be negotiated through Liggett, of Pittsburg, and Emery agreed that in the event he made a sale of the property through Liggett, he should share equally in the profits; and shortly afterwards a writing was entered into between Clark and Emery and Liggett, by which Liggett was empowered to sell for a certain price, and providing that all over and above that price he could have as his compensation for making the sale. This effort was also fruitless, and nothing further was done in the matter for nearly a year, when Emery made a sale of the property to the defendants, Cochrans, and since this sale the plaintiff asserts that he is entitled to one-half of the profits. He was not interested in making this sale to Cochrans; took no part in it; did nothing in regard to it. And not only is this so, but the time limit for the Johnson and Hess options being about to expire, it became necessary that they should be accepted. They were accepted by Emery, and all contracts taken in his name individually, he thereby becoming responsible for the entire purchase money. No liability attached to Clark. No sum was paid by him, and in no way did he become responsible for a dollar in the negotiation of these options. And not being liable, not taking any part in making this sale, it resting in abeyance for nearly a year after the effort to sell through Liggett was made, it does not seem reasonable that a contract, such as is contended for by him, existed. Considerable stress is laid upon the fact that in the contract between Clark and Emery and Liggett, it is recited that Clark and Emery are parties of the first part, and that they own or control certain coal lands. It is undertaken to conclude from this that there is an admission of partnership upon the part of Emery, but in view of all the circumstances connected with and surround-

ing this transaction, this recital is not inconsistent with the theory of Emery, because, as claimed by him, if Clark had made the sale to the companies referred to, or through Liggett, he would have been equally interested in the profits' arising from the sale; and this being the fact, it cannot be held that there is any inconsistency in the contract as claimed by Emery and the written contract with Liggett.

The testimony of John C. Neff, to the effect that Emery came to him and asked for an option on the lands in question, and that he refused to give it to him, informing him that he had told Clark that he would wait until the latter found out whether or not he had a buyer, whereupon Emery told him that he and Clark were partners, and that whatever he did would be satisfactory with Clark, is relied upon to establish the fact of the partnership between Clark and Emery. But it will be observed that the witness says Clark thought he had a buyer for the coal, and that buyer was either the company, or the manager of the company for which Clark was working. Admitting that Emery told Neff that he and Clark were partners, which Emery denies, still Emery does not deny that as to the sale to the company, which Clark claimed he could make, they were to share equally in the profits. And at the time he had this conversation with Clark, he fully believed that Clark would share in the profits, because Clark had led him to strongly believe that he could make sale to one of the companies. If Clark was a partner with Emery, why were the contracts and options all taken in Emery's name? Why did Emery advance all the money, and become individually liable to the land owners? These facts are certainly not consistent with the plaintiff's claim, but speak most strongly against him.

The only proper deduction from the facts is that Clark was empowered to make sale, and if he did so, he was to receive for his services one-half of the profits. "To constitute a partnership between parties who share in the profits, the interest in the profits must be mutual—each person must have a specific interest in them as a principal trader; he is not a partner merely because he receives a part of the profits as compensation for his services." *Sodiker* v. *Applegate*, 24 W. Va. 411. And in this case, delivering the opinion of the Court, Judge Snyder says: "If persons merely occupy the

relation of principal and agent, employer or employe or factor, no partnership can be predicated upon the fact that such agent, employe or factor receives a part or share of the profits for his services or other benefits conferred.  \* \* \* In every partnership there is a community of interest, but every community of interest does not create a partnership. There must be a joint ownership of the partnership funds, or a joint right of control over them and also an agreement to share the profits or losses arising therefrom." *Chapline* v. *Conant*, 3 W. Va. 507.

There is nothing to show any liability upon Clark for losses and expenses, which is deemed an important fact tending to show that the contract is not one of partnership.

It is claimed that such transactions as we have here under consideration have been passed upon, at different times, by the Supreme Court of Pennsylvania, and uniformly held to be the operations of a partnership, and the cases of *Howell* v. *Kelley*, 149 Pa. 473, and *Frazer et al.* v. *Linton*, 183 Pa. 186, are cited. In the first of these cases, the court decided that profits realized in a single transaction, procuring options on coal lands and re-selling them at a profit, under a parol agreement, can be recovered in an action by one partner against the other, and that the Statute of Frauds has no application, and in the other case it was held that when a bill in equity is filed by one partner against the other for an account, where the evidence establishes the existence of the partnership, but no definite arrangement as to the division of the profits, the presumption of law is that the profits were to be equally divided. While it is unnecessary for us to either affirm or repudiate the doctrine enunciated in these decisions, yet the doctrine therein pronounced seems to be sound. But, whether so or not, it has no application here, because there it was found from the evidence that a partnership existed, and here the reverse is found. Of course, if we should find the existence of a partnership, then the doctrine of these cases might be applied.

We see no error in the decree of the circuit court, and it is affirmed.

*Affirmed.*