**ALTMAN et al. v. ALCOLITE, Inc., et al.**
No. 155.

District Court, N. D. West Virginia.
Jan. 27, 1936.

Charles McCamic, of Wheeling, W. Va., and Sachs & Caplan, of Pittsburgh, Pa., for plaintiffs.

Frank A. O'Brien, of Wheeling, W. Va., William P. Lehman, and Ward Lanham, both of Fairmont, W. Va., and George J. Segal, of Philadelphia, Pa., for defendants.

BAKER, District Judge.

Prior to the 9th day of November, 1929, the defendant Roszel A. Stehley was practicing dentistry in the city of Fairmont, W. Va., and had perfected a substance used for the manufacturing of artificial dental blanks, which said substance was later advertised and sold under the name "Alcolite."

For a long period prior to said date the plaintiffs had been engaged in the dental supply business in the city of Pittsburgh, selling many types of dental supplies, some of which were trade-marked with the name "Alco."

Prior to June, 1929, the plaintiffs became interested in said product, and negotiations were entered into between them and Roszel A. Stehley looking toward the advertising and sale of dental blanks manufactured from said substance, which said negotiations culminated in a written contract dated the 9th day of November, 1929, between the plaintiffs and the American Beauty Denture Company, Inc., which company later changed its name to Alcolite, Inc., and to which company the defendant Stehley had assigned his right, title, and interest in and to said substance. Said contract is as follows:

"This Agreement, Made this the 9th day of November, 1929, by and between The American Beauty Denture Company, Incorporated, of Fairmont, West Virginia, party of the first part, and Altman Gold & Refining Company, of Pittsburgh, Pennsylvania, party of the second part.

"Witnesseth, That for and in consideration of the sum of One Dollar in hand paid, the receipt of which is hereby acknowledged and the further Covenants and Agreements hereinafter set forth, the party of the first part does hereby appoint Altman Gold & Refining Company, party of the second part, sole distributors, in the United States of America, of the base for artificial dentures, the United States Registered Trade Mark of same being 'Alcolite' the ownership of which is vested in The American Beauty Denture Company, Incorporated, party of the first part, so long as the Altman Gold & Refining Company, party of the second part, take accept and pay for the artificial denture base blanks, each month for the previous month's shipments.

"It is hereby further mutually understood and agreed by the parties hereto, that all previous letters, agreements or contracts, either verbal or otherwise, are hereby cancelled and made null and void, from the month and day and year first above written.

"The party of the first part agrees to furnish to the party of the second part the said artificial denture base blanks known as 'Alcolite.'

"It is further mutually understood and agreed, that any violation of any stipulation of the covenants and agreements herein contained, constitutes an immediate annulment of this agreement and contract, and the same shall cease and determine thereby.

"It is further understood and agreed that this contract may be cancelled by the Altman Gold & Refining Company by written notice to The American Beauty Denture Company, Incorporated, party of the first part.

"Witness the following signatures and seals this the day and date first above written.
"The American Beauty Denture Co. Inc.
 "R. A. Stehley, President.
"The Altman Gold & Refining Company.
 "Joseph Altman, Mgr. [Seal.]"

Although a great deal of testimony has been taken in this cause and many issues have been raised, an analysis of the evidence reveals but two questions in controversy:

First. What are the respective rights of the plaintiffs and defendant Alcolite, Inc., in and to the trade name "Alcolite." And

Second. What, if any, are the plaintiffs' rights and the obligations of the defendant Alcolite, Inc., in regard to the employment of the plaintiffs as distributors of "Alcolite" blanks under the contract of November 9, 1929?

It may here be observed in passing that there is no evidence to connect the defendant Stehley as an individual with the matters involved in this cause, and the case as to him should therefore be dismissed. Throughout this memorandum, therefore, reference to the defendant shall refer to the defendant Alcolite, Inc., alone.

As to the first proposition it is the contention of the plaintiffs that they had for a long period of time advertised and sold dental supplies under the trade-name "Alco," and the report of the special master finds such to be the case. The said report also finds that the name "Alcolite" was derived by adding the suffix "lite" to said trade-name "Alco." In the absence of further facts the plaintiffs would under the finding of the special master be entitled to the injunctive relief prayed for in the bill of complaint against the use of this trade-name by the defendant. By the terms of the agreement of November 9, 1929, however, the plaintiffs agreed to the use of said trade-name by the defendant and also by that contract, if not prior thereto, ratified its registration in the name of the American Beauty Denture Company, Inc., and the ownership thereof by that company. Plaintiffs seek to avoid the obligations of that agreement in this respect by seeking its reformation to the effect that the use of said trade-name was granted to the defendant only for so long a period as the plaintiffs should continue to be sole distributors for said product. The report of the special master finds that there was no fraud or mistake in the agreement of November 9, 1929, and the evidence clearly shows that said agreement was maturely considered before it was signed by the parties thereto. It is undisputed that several drafts of said contract were considered and destroyed as unsatisfactory by the plaintiff Joseph Altman before the agreement in its present form was accepted. In order that a contract may be reformed it must appear by clear, convincing, and unequivocal evidence that a mutual mistake was made and that the writing does not contain the true intention of the parties thereto at the time it was made. Jarrell v.

Jarrell, 27 W.Va. 743; Donato v. Kimmins, 104 W.Va. 200, 139 S.E. 714; American Mortgage Co. v. O'Harra, 56 F. 278 (C.C.A.9th). There is no clear, convincing, and unequivocal evidence of a mistake in this contract, and it must therefore be held that the plaintiffs are bound thereby; that there is no limitation or restriction on the use of the trade-name "Alcolite" by the defendant; and the prayer for injunctive relief in the premises must be refused.

 The rights of the plaintiffs as distributors for the defendant also seemingly rise or fall upon the interpretation of the contract of November 9, 1929, together with its modification on or about the 20th day of February, 1930. The defendant seeks an interpretation of the contract through reformation or through explanation by parol evidence under which the plaintiffs would be bound to purchase from month to month, at the price agreed upon, the entire output of dental blanks from the defendant's factory. This contention is based upon the phrase in said agreement "so long as Altman Gold & Refining Company, party of the second part, take, accept and pay for the artificial dental blanks, each month for the previous month's shipment." The defendant contends that by this language said agreement is made a contract of sale rather than a contract of agency, and that the plaintiffs having failed to pay for shipments of dental blanks made to them, the contract has been breached and defendant is under no obligation by reason thereof. Plaintiffs contend that such was not the intention of the contract, but that thereunder he was merely appointed the agent of the defendant company and agreed to make settlement for such denture blanks as were sold by him at the end of each month. The report of the special master finds the contention of the plaintiffs in this respect to be correct. The evidence discloses that at the time of the execution of this contract all of the parties to this cause were extremely optimistic as to the sale of "Alcolite" blanks. There seems to have been no thought given to any difficulties to be encountered in the sale of the product of the defendant's factory. The only concern at that time seems to have been as to the capacity of the plant to manufacture sufficient blanks to fill anticipated orders. This fact alone would seem to lead to the conclusion that the pres-

ent contention of the defendant was not the intention of the agreement at the time it was signed. It also appears from the evidence that a nation-wide campaign of advertisement and demonstration was undertaken by the parties hereto, the expense of which was divided equally between the plaintiffs and the defendant. There was no controversy as to whether or not the defendant should bear its portion of the time and expense devoted to this campaign, and during the first portion thereof the relationship between the parties was most amicable. Is it not reasonable to conclude that had the defendant understood that by the contract of November 9, 1929, plaintiffs are obligated to purchase the entire output of defendant's plant, it would have had no reason to expend its money and devote the time of its officers to this campaign, but would have insisted that the entire burden of marketing the product fall upon the plaintiffs? The special master has found that the contract was modified at the suggestion of the defendant, under which modification the plaintiffs were to receive 25 cents on each blank sold through other distributors. The court cannot agree with the contention of the defendant that this finding of the special master is erroneous. A reading of the testimony leaves no room for doubt that such modification was mutually agreed upon. Doctor Stehley's telegram to Mrs. Stehley gives no support to the contention of the defendant that the plaintiffs were to receive 25 cents commission only upon sales by agents appointed by the plaintiffs. Now if this modification was made, and the court so finds, it follows, as stated in defendant's brief, that it is inconceivable that defendant should enter into any further contract with the plaintiffs if the plaintiffs were then guilty of a serious breach of the original contract. It also follows that whether or not the original contract was one of sale or of agency, certainly the contract as modified was one purely of agency. Neither is there any merit to the contention of the defendant that the contract as modified was breached by the plaintiffs. The defendant entered into the contract of distribution with Ransom and Randolph before the plaintiffs had any opportunity to carry out their obligations thereunder.

There is no convincing, unequivocal evidence upon which to base a reformation of the contract in this respect, nor

is the contract so equivocal in this respect as to permit of interpretation through parol evidence. The burden rests upon the defendant to prove that such was the understanding and intention of the language of the contract, and it has not met this burden. Seitz v. Brewers' Refrigerating Co., 141 U.S. 510, 12 S.Ct. 46, 35 L.Ed. 837; Clark v. Emery, 58 W.Va. 637, 52 S.E. 770, 5 L.R.A.(N.S.) 503; Lincoln National Life Ins. Co. v. Bastian, 31 F.(2d) 859 (C.C.A.4th).

Much testimony was taken in regard to certain trade acceptances sent by the plaintiffs to the defendant and as to whether they represented advancements to the defendant or were in payment for dental blanks, and much stress is laid upon this point in the briefs of both counsel for the plaintiffs and counsel for the defendant. Whether these trade acceptances were given as advancements or as payments seems of little value in determining this controversy. If they were advancements, that fact would neither add to nor detract from the plaintiffs' rights under the contract; while if, on the other hand, they were in payment for shipments of dental blanks, that fact would not be at all conclusive or even persuasive of the defendant's contention.

 In conclusion, therefore, it would seem that the contract of November 9, 1929, should not be reformed or modified by parol evidence either as contended for by the plaintiffs or by the defendant, but that the rights of each of the parties should be determined thereby. The defendant, therefore, is entitled to the unrestricted use of the trade-name "Alcolite" in so far as the sale and advertisement of its denture blanks is concerned. On the other hand, the report of the special master finds and the evidence supports that the contract of distributorship was breached by the defendant and the plaintiffs are entitled to damages growing out of such breach.

Defendant contends that such damages can and should be sought by the plaintiff in an action at law, and that the injunctive relief prayed for in the bill of complaint having been refused, the bill should be dismissed. An examination of the bill of complaint, however, discloses an allegation that plaintiffs are entitled to an accounting from said defendant of the number of denture blanks sold and that they have no way of ascertaining such fact other than through discovery. There follows a prayer for such discovery, for an accounting, and for an award of damages. Even though the prayer for injunctive relief and for reformation of the contract be refused, there remains sufficient equitable relief prayed for to sustain the bill. Then, too, it is undisputed that an accounting between the parties would be quite complicated. It is true that defendant claims that the special master had no difficulty in arriving at definite figures, but upon argument it was admitted that these figures were agreed upon by the parties hereto and submitted to the special master. There seems no reason why in this case an exception should be made to the general rule that equity having taken jurisdiction will adjudicate all matters in controversy.

The exceptions to the report of the special master and each of them may therefore be overruled, and a decree may be prepared in conformity therewith.